THOMPSON, J.
Joseph Sibold appeals his conviction for child abuse, arguing that the trial court erred when it denied his motion for judgment of acquittal. We agree and reverse.
At trial, the mother, Sara E. Hughes, testified without objection to statements Sibold made after the child was injured. She testified that she left the child home with Sibold, who is the child’s step-father, while she and her mother went shopping. When she returned, Sibold told Hughes that he had hurt the child. He explained that he put the child on the couch for a nap, and later, forgetting that the child was there, he “plopped” down on the couch, injuring the child. Sibold told Hughes that he “mushed” the baby’s face with his hand, causing the injuries.[1]
Dr. Matthew Seibel, M.D., the state’s expert, testified that when he first examined the child, he was told that the injuries were caused by someone falling on the child with a body part other than a hand. This history was not consistent with the injuries, which showed marks from an open hand. Dr. Seibel stated that the day of trial was the first time that he had heard that the “sitting on” was done by someone’s hand. He testified:
[I]f the history that you’re providing, someone falls down on the couch and the hand goes, bam, hits accidentally, is that consistent [with the marks], absolutely.
The defense moved for a judgment of acquittal arguing that the state had not established a prima facie case and that Dr. *1002 Seibel testified that the injuries were consistent with the father’s statement of what occurred. The trial court responded:
You know, I’m not prone to do these type of things. But, I have some very, very strong concerns here ... I mean, I really, really listened to the expert. And it — it he heard something for the first time today, and he does not rule that out. And then we get into speculation.
The state argued that the father’s statement described a blunt force trauma — the father sat down, pressed on the child’s face and left a mark — which Dr. Seibel clearly ruled out. The trial court stated:
There [are] a couple of things that I’m trying to look at. This is about as close as I usually get. Because most of the time, there’s about 20 miles between a [directed verdict] argument and its actual credibility.
Here is what your client says. And I’ve — I’m thinking out loud. I’m not commenting or anything, I’m thinking out loud. He was covered up, so I didn’t see him and accidentally forgot he was there. So I plopped down. In doing so, I mushed his face, touching him under the eye with my nail, leaving almost like a hickey mark under with my nail.
According to his statement — the doctor addressed the probabilities of the marks on the child’s face vis a vis your client’s version of plopping. And he ruled that out saying, it ain’t gonna happen. It had to be a slapping thing.
I’m gonna deny the motion. I mean, I really did some analysis on this thing, you know. But I’m gonna deny the motion only at the close of the state’s case.
When the defense argued that the medical expert could not say with a reasonable degree of medical certainty that it was an open-handed slap rather than an accident, the trial court clarified:
Oh, no. He did say it was an openhanded slap. There is no argument. There are linear markings. The question is, how did the slap occur. Did the slap occur this way, this a vertical motion of a slap, or did the slap occur— according to your proposition to me— that going down and plopping would create a slap, a slap, but it would be a horizontal slap.
So, we don’t have any argument a slap did, in fact, occur. He never backed off of that based upon the linear markings on the — on the side of the left side of the face.
The court denied the motion for judgment of acquittal, and Sibold was convicted as charged and sentenced to five years in prison as a prisoner releasee reoffender.
For Sibold to be convicted of child abuse, the state had to prove that Sibold intentionally inflicted physical injury upon the child or that Sibold committed an intentional act that could reasonably be expected to result in physical injury to the child. See § 827.03(l)(a),(b), Fla. Stat. Evidence was presented that the child was injured and that Sibold admitted that he was the one who caused the injuries to the child. Sibold’s hypothesis of innocence was that he accidentally caused the injuries when he sat down heavily on the couch, injuring the child’s face with his hand.
“[I]ntent, being a state of mind, is rarely if ever susceptible of direct proof. Almost inevitably ... it must be shown solely by circumstantial evidence.” Grover v. State, 581 So.2d 1379 (Fla. 4th DCA 1991). Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. State v. Law, 559 So.2d 187, 188 (Fla.1989). If there is such an inconsistency, then it is for the finder of *1003 fact to resolve whether the evidence proves the defendant’s guilt. Huck v. State, 881 So.2d 1137, 1145 (Fla. 5th DCA 2004).
In this case, the evidence was not inconsistent with Sibold’s hypothesis of innocence. Instead, the medical evidence was consistent with Sibold’s hypothesis of innocence. Dr. Seibel was asked whether the injuries could have resulted when a person dropped onto the couch and slapped the child in the process. The doctor said the injuries were “absolutely” consistent. Furthermore, Sibold’s theory of innocence was not inconsistent with the mother’s testimony or with Sibold’s written statement to the police that after forgetting the child was on the couch, he sat down on the couch, and he:
mushed his face catching him under the eye with my nail leaving almost like a hick[e]y mark under it and my nail also left a scratch on the same side.
Because there were no inconsistencies between the evidence and the defense theory, we reverse the judgment and sentence and remand for the discharge of Sibold.
REVERSED and REMANDED with directions.
PLEUS and MONACO, JJ., concur.

. Sibold’s written, voluntary statement to a deputy was consistent with what he told Hughes.